IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCHRONDA COTTON-BASNER

       Plaintiff,

v.                                                                              Case No. 21-504

CAVE ENTERPRISES OPERATIONS, LLC
d/b/a Burger King of Ironwood;

       Defendant.

## COMPLAINT

NOW COMES Plaintiff Schronda Cotton-Basner, by her attorneys, and as and for their complaint against the Defendant, alleges and shows to the Court, as follows:

### IDENTIFICATION OF PARTIES

1. Plaintiff Schronda Cotton-Basner ("Plaintiff") is an adult resident of the state of Michigan.
2. Defendant Cave Enterprises Operations, LLC. ("Cave Enterprises") is a Foreign Limited Liability Company.  For purposes of service of process, Defendant's Registered Agent is Business Filings Incorporated, whose mailing address is 8020 Excelsior Dr., Suite 200, Madison, Wisconsin 53717.
3. Defendant Cave Enterprises owns and operates several Burger King restaurants throughout Minnesota, Wisconsin, and Michigan, including one facility located at 1410 E Cloverland Dr., Ironwood, MI 49938 ("Burger King").
4. At all times relevant to this matter, Defendant Cave Enterprises employed in excess of fifteen (15) employees.

### PROCEDURAL HISTORY

5. This action is brought pursuant to Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e, *et sec.*

1

6. The Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.
7. The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff's state law claims share all common operative facts with her federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.
8. Venue is proper in, and Defendant is subject to the personal jurisdiction of, this Court because Defendant maintains facilities and business operations in this District and is a resident of this District.
9. On or about July 23, 2020, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of Plaintiff's race, color, and sex.
10. On May 12, 2021, the EEOC issued a Notice of Right to Sue letter to Plaintiff for the allegations contained in her July 23, 2020 complaints.

## CLAIM

11. Jesse Walitshek is the general manager at Burger King and was serving in that capacity at times relevant to this action.
12. Tyler Huff was my immediate supervisor at Burger King at times relevant to this action.
13. Defendant Cave Enterprises was at all times relevant to this matter Plaintiff's "Employer."
14. Defendant Cave Enterprises is liable for the acts of their agents and employees as set forth below.
15. Plaintiff was hired at Burger King in March of 2017.
16. Plaintiff is a black female that goes by the name of Ma'Shell at work.
17. Beginning in 2017, Plaintiff has been subject to repeated comments regarding her race.
18. Plaintiff's co-workers have referred to her as "you people" in relation to the Black Lives Matter movement, by stating that "I heard you people" have a new national anthem now.
19. Plaintiff's supervisor, Tyler Huff ("Mr. Huff"), says "nigga" repeatedly nearly every day they work together.

20. Mr. Huff says "nigga" in Plaintiff's presence and in the presence of other co-workers.
21. Sometimes when other employees do something that Mr. Huff does not agree with, he will say "Fucking white people, am I right Ma'Shell?"
22. Mr. Huff says "nigger" in front of our general manager, Jesse Walitsheck, and Jesse does not step in and say anything.
23. This has happened since at least March of 2020 and these daily racist comments have been occurring since the end of 2019.
24. One of my previous shift leaders, Jessica, would say "that black bitch did that" whenever anything bad happened in the workplace.
25. My managers did not do anything to stop these comments.
26. Whenever anything is burned on the grill, co-workers and managers say "Ma'Shell, that burger is starting to look like you it's so dark."
27. When the grease needs to be changed in the fryer, my co-workers say "it's time to change the grease, it's starting to get as dark as Ma'Shell.
28. Since the time that Plaintiff was hired, several white co-workers have received raises and promotions and that she has not.
29. Upon information and belief, Plaintiff was more qualified and a better worker than many of these people.
30. Specifically, Mr. Huff, Nikki, and Josh (last names unknown) were hired after Plaintiff and promoted before me despite Plaintiff being qualified for the promotions.
31. Mr. Huff, Nikki and Josh are all white.
32. On at least 7 occasions Plaintiff has requested to take the ServeSafe certification test.
33. The ServeSafe certification would allow Plaintiff to be a shift-manager and would have come with a raise and increased responsibility.
34. Plaintiff was not allowed to take the ServeSafe test.
35. Several other white employees with less experience than Plaintiff were allowed to take the ServeSafe test.
36. The most recent time that this occurred was as recent as March of 2020.
37. Plaintiff's general manager, Jesse, told Plaintiff that he didn't think that she was serious when she requested to take the ServeSafe test.
38. Upon information and belief, managers never thought that white employees who asked to take the ServeSafe test were not serious about that request.

39. On January 3, 2020, Plaintiff was talking with Mr. Walitshek after her shift.
40. Mr. Walitshek walked away from Plaintiff and as she turned to walk away, a co-worker, Terry, walked up behind Plaintiff and slapped her butt extremely hard.
41. Plaintiff's butt was swollen and sore for 3 days after this.
42. The following day, Plaintiff informed Mr. Walitshek of what Terry had done.
43. Mr. Walitshek advised Plaintiff that he would talk to Terry, but nothing else was done for Plaintiff in response to this issue.
44. On multiple occasions throughout Plaintiff's employment, she was requested to run errands for her supervisors while she was scheduled to be on the clock.
45. These errands included running to the Ashland and Duluth area Burger Kings to pick up supplies.
46. During these times, Plaintiff was required to clock out and was not reimbursed for her mileage.
47. Upon information and belief, white employees were compensated for their time that they spent doing work related errands on company time.
48. On several occasions, Plaintiff's previous supervisors, Carrie and Randy, who were dating, as well as others would get drunk after work and Carrie would ask Plaintiff if she was sleeping with Randy or other people's boyfriends.
49. Plaintiff was not sleeping with anyone's boyfriend.
50. Upon information and belief, no managers ever accused any white employees of sleeping with anyone else's boyfriend.
51. When there were two people scheduled to be on a kitchen shift, Plaintiff was routinely left to work a solo in the kitchen.
52. This type of solo shift is very difficult and other white employees were not required to work these solo kitchen shifts as much as Plaintiff.
53. Mr. Walitshek had previously been employed by Defendant at a different Burger King location.
54. At the prior location, Mr. Walitshek sexually harassed employees at that location.
55. Defendant knew of Mr. Walitshek's sexual harassment at the prior location, yet they allowed him to transfer to the Ironwood Burger King and continue as a manager.
56. Defendant should have known that Mr. Walitshek would continue to condone illegal, reprehensible conduct toward women and minorities in the workplace.

## AS AND FOR A FIRST CAUSE OF ACTION
## Harassment and Discrimination in Violation of Title VII of the Civil Rights Act of 1964
## 42 U.S.C. § 2000e-2(a)

57. Plaintiff repeats and realleges the preceding paragraphs as if set forth herein.
58. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of her sex, race and color.
59. Plaintiff was harassed, discriminated against, and declined promotions on the basis of her sex, race, and color
60. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.
61. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on sex.
62. Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## AS AND FOR A SECOND CAUSE OF ACTION
## Discrimination (Hostile Work Environment) in Violation of Title VII of the Civil Rights Act of 1964
## 42 U.S.C. § 2000e-2(a)

63. Plaintiff repeats and realleges the preceding paragraphs as if set forth herein.
64. Plaintiff was subject to harassment by Defendant and Defendant's agents and employees, including Mr. Walitshek and Mr. Huff, because of her race and color.
65. Plaintiff was subjected to verbal, physical, and written conduct relating to her race and color that was offensive in nature.
66. Plaintiff was subject to conduct that her white coworkers were not subject to.
67. Defendant's conduct, including the conduct of Defendant's agents, was not welcomed by Plaintiff.
68. Mr. Walitshek and Mr. Huff used their positions of power as Plaintiff's management to subject her to unwanted conduct regarding Plaintiff's race and color.
69. The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find his or her work environment to be hostile or abusive.

70. Plaintiff believed her work environment to be hostile or abusive as a result of Defendant's agents' and employees' conduct.
71. Management level employees knew, or should have known, of the abusive conduct. Mr. Walitshek was personally present during many of the incidents that the abusive conduct occurred. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it.
72. Defendant took no actions to stop the abusive conduct directed toward Plaintiff.
73. Defendant did not exercise reasonable care to prevent harassment in the workplace, and did not exercise reasonable care to promptly correct any harassing behavior that did occur.
74. As a direct, legal and proximate result of the harassment, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.
75. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination.
76. Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

**WHEREFORE**, Plaintiff requests the following:

A. Judgment in favor of Plaintiff and against Defendant;

B. For lost wages and all other compensation denied to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;

C. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

D. For punitive damages in an amount to be determined at trial;

E. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

F. For an order enjoining Defendant from engaging in the unlawful acts complained of herein;

G. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k) and other laws; and

H. For such other and further relief as this Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.**

Dated this 10th day of August, 2021

                                  ANICH, WICKMAN & LINDSEY, S.C.

                                  By: */s/ electronically signed by Max T. Lindsey*
                                      Max T. Lindsey, WI State Bar No. 1112865
                                      Attorney for Plaintiff
                                      220 Sixth Avenue West
                                      P.O. Box 677
                                      Ashland, WI 54806
                                      Phone: (715) 682-9114